1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES A. MOSIER, | CASE NO.    1:11-CV-01034-MJS (PC) |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| | (ECF NO. 10) |
| v. | AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS |
| CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION, et al., | |
| Defendants. | |
| _____/ | |

**FIRST SCREENING ORDER**

**I.    PROCEDURAL HISTORY**

        Plaintiff James A. Mosier is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 1.)

Plaintiff filed a First Amended Complaint (First Am. Compl., ECF No. 10) prior to screening of his Complaint. The First Amended Complaint is now before the Court for screening.

## II.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393–94 (1989).

## III.   SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff, an epileptic, was incarcerated at North Kern State Prison (NKSP) on March 17, 2011. (First Am. Compl. at 5.) He was transferred to the California Substance

Abuse Treatment Facility (SATF) on May 13, 2011. (Id. at 7.)  He has suffered frequent seizures during incarceration, and they interfere with daily activities. (Id. at 5-14, 17.) Defendant medical staff at NKSP and SATF have been deliberately indifferent to his medical needs, have failed to accommodate his epileptic seizures, have denied  or delayed medication and an ADA helmet, have failed to assist him during seizures, have improperly processed his grievances, and have failed to transfer him to a more appropriate medical correctional facility. (Id. at 2-3, 5-14.)

Defendant correctional staff at NKSP and SATF have been similarly deliberately indifferent to his medical needs.  They have delayed delivery of medication and the ADA helmet, intentionally used flashlights triggering seizures, harassed him and accused him of "faking" seizures, improperly processed his grievances, and failed to transfer him to a more appropriate medical correctional facility. (Id.)

Plaintiff names Defendants[1] (1) the California Department of Corrections and Rehabilitation (CDCR),[2] (2) M. Junious, NKSP Warden, (3) J. Yang, NKSP Nurse, (4) M. Cate, Director of CDCR, (5) K. Allison, SATF Warden, (6) E. Enonmeh, SATF Chief Medical Officer, (7) T. Brown, SATF Nurse, (8) J. Salinas, SATF Correctional Officer, (9) J. Williams, SATF Correctional Officer, (10) Vigarino, SATF Correctional Officer, (11) Toste, SATF Correctional Officer, (12) Rodriguez, SATF Correctional Officer, (13) Mata, SATF Correctional Officer, (14) Abeydna, SATF Nurse, (15) Villasenor, SATF Nurse, (16) Olemeko, SATF Nurse, (17) Does 1-50. (Id. at 3-5.)

---

[1] The First Amended Complaint references Dr. Vasudeva, but fails to name him as a Defendant.

[2] The First Amended Complaint names the CDCR solely for violations of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

1
2
3
4

Plaintiff alleges he has suffered traumatic brain injury (Id. at 3).  He seeks a declaration that his federal rights have been violated, injunctive relief transferring him to a medical correctional facility more appropriate to his needs, and monetary compensation. (Id. at 18-19.)

5
6

IV.   **ANALYSIS**

7

A.   **Pleading Requirements Generally**

8
9
10
11
12
13

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

14
15
16
17
18
19
20
21
22
23

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed.R.Civ.P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949–50.

24
25

B.   **Federal Rule of Civil Procedure 18(a)**

26
27

"Fed.R.Civ.P. 18(a) [states that]: A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or

-4-

as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party. Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

The fact that claims are premised on the same type of constitutional violation(s) (here deliberate indifference and failure to accommodate) against multiple defendants does not make them factually related. Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event.

The First Amended Complaint contains a number of unrelated claims in violation of Rule 18(a). There are at least  two distinct groupings of unrelated claims within Plaintiff's allegations: (1) deliberate indifference and failure to accommodate claims against Defendants CDCR, Junious, Cate, Yang, and Does arising at NKSP, and (2) deliberate indifference and failure to accommodate claims against Defendants CDCR, Allison, Cate, Vigarino, Olemeko, Enonmeh, Mata, Williams, Abeydna, Toste, Salinas, Villasenor, Brown, Gipson, and Does arising at SATF.[3]

---

[3] Claims against prison personnel at different facilities are generally unrelated and Plaintiff alleges no basis to reasonably infer that the actions of NKSP Defendants were related to actions of SATF Defendants.

The Court will review and discuss all of Plaintiff's claims and the law applicable thereto so that Plaintiff might evaluate which, if any, may be and should be pursued here and which, if any, may be and should be pursued in different action(s).

Plaintiff must file a separate complaint for each unrelated claim against different Defendants. If he does not, all unrelated claims will be subject to dismissal.

### C.    Personal Participation and Doe Defendants

To state a claim under § 1983, Plaintiff must demonstrate that each individually named defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S.Ct. at 1949. Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948–49.

Plaintiff fails to allege any facts personally linking Defendants Cate, Allison, Junious, and Enonmeh to any alleged rights violation. These Defendants can not be held liable under § 1983 solely because of their supervisory capacity. Nor is their involvement in review of prison health care appeals alone a basis for liability. "Inmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Buckley v. Barlow, 997 F.2d 494,495 (8th Cir. 1993) (actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under § 1983). Plaintiff may not proceed against these Defendants unless he alleges facts plausibly claiming each *personally* violated, or knowingly directed a violation of, his constitutional

rights.

Moreover, "[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). "It is permissible to use Doe defendant designations in a complaint to refer to defendants whose names are unknown to plaintiff. Although the use of Doe defendants is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe defendants creates its own problem: those persons cannot be served with process until they are identified by their real names." Robinett v. Correctional Training Facility, 2010 WL 2867696, *4 (N.D. Cal. July 20, 2010).

Plaintiff is advised that Doe Defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute the Defendants' actual names. The burden is on Plaintiff to promptly discover the full names of Doe Defendants. Id.

D.     **Deliberate Indifference**

1.     Serious Medical Needs

Plaintiff alleges Defendants have been deliberately indifferent to his epilepsy and thereby violated his Eighth Amendment rights.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The two prong test for deliberate indifference requires a plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the

-7-

defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060). In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [§] 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

To establish that such a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); see also Wilhelm v. Rotman, ⎯⎯ F .3d ⎯⎯, 2012 WL 1889786 *7 (9th Cir. May 25, 2012) (doctor's awareness of need for treatment followed by his unnecessary delay in implementing the prescribed treatment sufficient to plead deliberate indifference); see also Snow v. McDaniel, ⎯⎯ F.3d. ⎯⎯, 2012 WL 1889774 *7 (9th Cir. May 25, 2012) (decision of non-treating, non-specialist physicians to

repeatedly deny recommended surgical treatment may be medically unacceptable under all the circumstances).

Plaintiff's allegations of epilepsy and related seizures interfering with his daily activities, taken as true on screening, are sufficient to show a serious medical need satisfying the first prong of deliberate indifference.[4]

However, Plaintiff has not stated facts claiming any particular medical staff Defendant(s) intentionally denied, delayed or interfered with treatment of his needs in a medically unacceptable manner. It appears Plaintiff has had ongoing access to medical staff and medical treatment and was issued a May 18, 2011 medical chrono for his epilepsy and seizures. His allegations of occasional delay in receiving medication and of a nurse providing medication "in spite of the fact that Plaintiff stated he was allergic" to the medication might under some circumstances give rise to a deliberate indifference claim, but Plaintiff has not alleged sufficient factual detail under the standards stated above for the Court to find deliberate indifference.

Plaintiff's allegations, taken as true for purposes of screening suggest no more than mere negligence. Cf., White v. Napoleon, 897 F.2d 103, 110 (3rd Cir. 1990) (doctor's use of inappropriate drug for no valid reason, or persistent use of a particular medication after prisoner told doctor that seizures had increased in ferocity and frequency, may be sufficient to state deliberate indifference); Gallagher v. City of Winlock, Wash. 287 Fed.Appx. 568, 576 (9th Cir. 2008) (deliberately indifference to

---

[4] See McGuckin, 974 F.2d at 1059–60 ("[T]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").

serious medical needs where police denied for over one hour arrestee's repeated requests to take epilepsy medication and arrestee later suffers a seizure); Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir.1998) (deliberate indifference where jail officers and nurse knew plaintiff had epilepsy, knew he was not receiving any medication, and ignored his repeated requests for treatment).

Similarly, nothing before the Court suggests that corrections staff was aware of any specific risk from Plaintiff's epilepsy or deliberately failed to comply with his medical chrono.  He alleges they used flashlights to induce seizure activity. However, the allegations are insufficient for the Court to determine whether Plaintiff merely assumes such improper motivation or whether something about what the staff said or did supports it or, conversely, rules out a valid penological purpose for using the flashlights to, for example, assist medical personnel in diagnosing, measuring or treating his epileptic condition or simply to check on the status of prisoners. If he wishes to pursue a claim in this regard, Plaintiff should include all facts known to him which he feels support his belief that the lights were used deliberately for an improper purpose. What was said by corrections staff when they used the lights? Did Plaintiff object? What was the response from staff and their supervisors? Were flashlights used that way on non-epileptic prisoners? How often did this happen to Plaintiff?

His allegations of delay in providing the helmet required by his chrono and occasional delay in providing prescribed medication could under some circumstances suggest deliberate indifference, but again there is insufficient factual detail to reveal deliberate indifference by any Defendant(s) under the standards stated above. Plaintiff's allegations, taken as true for purposes of screening,  suggest no more than mere

negligence by the correctional staff.

Allegation of "verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under [§] 1983." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).

Plaintiff fails to allege facts plausibly claiming any deliberate denial, delay, or interference in addressing his medical needs resulting in harm. The Court will give Plaintiff an opportunity to amend to correct the noted deficiencies. If Plaintiff chooses to amend he must set forth sufficient facts claiming in addition to his demonstrated serious medical need, a deliberately indifferent response to that need on the part of Defendants causing harm to Plaintiff.

2.     Conditions of Confinement

Plaintiff alleges his housing is inappropriate and inadequately equipped to meet his needs in violation of his rights against cruel and unusual punishment.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

To establish a violation of this duty, a prisoner must satisfy both an objective and subjective component. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). First, a prisoner must demonstrate an objectively serious deprivation, one that amounts to a denial of "the

-11-

minimal civilized measures of life's necessities." <u>Keenan</u>, 83 F.3d 1083 at 1089 (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981)). In determining whether a deprivation is sufficiently serious within the meaning of the Eighth Amendment, "the circumstances, nature, and duration" of the deprivation must be considered. <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000).

Second, a prisoner must also demonstrate that prison officials acted with a sufficiently culpable state of mind, that of "deliberate indifference." <u>Wilson</u>, 501 U.S. at 303; <u>Johnson</u>, 217 F.3d at 733. A prison official acts with deliberate indifference if he knows of and disregards an excessive risk to the prisoner's health and safety. <u>Farmer</u>, 511 U.S. at 837. In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [to the inmate], and [the prison official] must also draw the inference." <u>Id.</u>

Nothing before the Court suggests how or why SATF is inappropriate and inadequate for Plaintiff's needs. Plaintiff fails to allege facts claiming that he has been denied "the minimal civilized measure of life's necessities." Plaintiff can not then allege facts of Defendants' deliberate indifference thereto.

Plaintiff has failed to allege an objectively serious deprivation or Defendants' subjective deliberate indifference thereto. The Court will allow an opportunity to amend to correct the noted deficiencies. In order to state a cognizable claim, Plaintiff must set forth sufficient facts plausibly claiming the above noted elements attributable to each Defendant.

### E.   <u>Accommodation</u>

Plaintiff alleges Defendants have failed to accommodate his epileptic disability.

-12-

Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (RA) "both prohibit discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.

Section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance  . . . ." 29 U.S.C. § 794.

Title II of the ADA and the RA apply to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453–56 (9th Cir. 1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052.

"To establish a violation of [Section] 504 of the RA, a plaintiff must show that (1)[he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Id.

-13-

1
2
3
4
5
6
7

"To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139.

8
9
10

Prison medical care is considered a service, program or activity covered by the ADA. Kiman v. New Hampshire Dept. of Corrs., 451 F.3d 274, 284 (1st Cir. 2006) (citing United States v. Georgia, 546 U.S. 151 (2006)).

11
12
13
14
15
16
17
18
19
20
21
22

Plaintiff's epilepsy is sufficient to allege a disability. See Bilal v. New York City Dept. Of Corrections 2010 WL 1875731 **4 (S.D.N.Y. May 10, 2010) ("Epilepsy is recognized as a 'disability' under the ADA.)  However, Plaintiff fails to allege facts showing he was denied access to medical treatment. "Whether and when the ADA supports claims by prisoners regarding a prison's medical . . . services is a close question that turns on distinguishing actionable claims of 'denial of medical treatment' from non-actionable claims of mere inadequate or negligent medical treatment." Payne, 2012 WL 1151957 *6; see also Kiman, 451 F.3d 274 at 284 (noting courts have "differentiated ADA claims based on negligent medical care from those based on discriminatory medical care").

23
24
25
26
27

The  treatment, or lack of treatment, concerning Plaintiff's medical condition does not provide a basis upon which to impose liability under the RA or the ADA.  Simmons v. Navajo County, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.");

-14-

Burger v. Bloomberg, 418 F.3d 882, 882  (8th Cir. 2005) (medical treatment decisions not a basis for RA or ADA claims).

Plaintiff's predicate deliberate indifference claim fails for the reasons stated above. Plaintiff does not allege facts plausibly claiming denial of medical treatment. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." Graham ex rel. Estate of Graham v. County of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004) (quoting Westlake v. Lucas, 537 F.2d 857, 860, n.5 (6th Cir. 1976)).

Plaintiff fails to allege facts claiming the prison medical care program providing the benefit or services in issue receives federal financial assistance for purposes of the RA.

To the extent that Plaintiff wishes to seek assistance that he believes is due pursuant to the Armstrong Remedial Plan,[5] he "must pursue his request via the consent decree or through class counsel." Crayton v. Terhune, No. C 98-4386 CRB(PR), 2002 WL 31093590, *4 (N.D. Cal. Sept. 17, 2002). Plaintiff may not sue for damages in this action solely on the basis that defendants allegedly violated the Armstrong Remedial Plan.

Plaintiff fails to state a claim for relief under the ADA and RA. The Court will allow leave to amend. If Plaintiff chooses to amend, he must set forth sufficient facts showing the above noted elements attributable to each of the Defendants. Plaintiff should note

---

[5] The Armstrong Remedial Plan refers to a remedial order issued in Armstrong v. Davis, No. CV94-2307-CW, by the District Court for the Northern District of California to enjoin practices that discriminated against disabled inmates in California Prisons. See generally Armstrong v. Davis, 275 F.3d 849 (9th Cir.2001); Armstrong v. Wilson, 124 F.3d 1019 (9th Cir.1997) (affirming order requiring submission of a remedial plan for CDCR's compliance with both the Americans with Disabilities Act, 42 U.S.C. §§ 12131-34, as well as the Rehabilitation Act of 1973, 29 U.S.C. § 749).

that he may not name prison officials in their individual capacities. <u>See</u> <u>Shaughnessy v.</u>
<u>Hawaii</u>, No. 09-00569 JMS/BMK, 2010 WL 2573355, at *8 (D.Hawai'i June 24, 2010)
(Individual liability is precluded under the ADA); accord <u>Anaya v. Campbell</u>, No. CIV
S-07-0029 GEB GGH P, 2009 WL 3763798, at *5-6 (E.D. Cal. Nov. 9, 2009).

### F.     Injunctive Relief

Plaintiff seeks injunctive relief in the form transfer to a medical correctional facility
appropriate for his needs.

Injunctive relief is an "extraordinary remedy, never awarded as of right." <u>Winter v.</u>
<u>Natural Res. Defense Council</u>, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary
injunction must establish that he is likely to succeed on the merits, that he is likely to
suffer irreparable harm in the absence of preliminary relief, that the balance of equities
tips in his favor, and that an injunction is in the public interest." <u>Id.</u> (citing <u>Munaf v. Geren</u>,
553 U.S. 674, 689–90 (2008)).

In cases brought by prisoners involving conditions of confinement, the Prison
Litigation Reform Act (PLRA) requires that any preliminary injunction "be narrowly drawn,
extend no further than necessary to correct the harm the court finds requires preliminary
relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. §
3626(a).

Plaintiff has not demonstrated that he will succeed on the merits of his case. His
Complaint fails to state any cognizable claim.

Nothing in the Complaint suggests real and immediate threat of injury. <u>See</u> <u>City of</u>
<u>Los Angeles v. Lyons</u>, 461 U.S. 95 (1983) (plaintiff must show "real and immediate"
threat of injury, and "past exposure to illegal conduct does not in itself show a present

case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present, adverse effects."). Plaintiff has a medical chrono in place. He does not indicate why his current housing is inadequate or why other facilities are adequate.

Plaintiff does not address the third or fourth elements, i.e., the balancing of equities and public interest concerns. First, absent a showing sufficient to find harm to Plaintiff, there is nothing to tip the balance of equities in Plaintiff's favor. Second, while the public has an interest in providing the best practical prisoner care, the record before the Court does not justify the Court substituting its judgment in these matters for that of the prison medical staff.

The various criteria not having been met, Plaintiff is not entitled to injunctive relief. The Court will allow leave to amend. If Plaintiff chooses to amend, he must set forth sufficient facts showing the above noted elements.

## V.     CONCLUSION AND ORDER

Plaintiff's Complaint does not state a claim for relief under § 1983. The Court will grant Plaintiff an opportunity to file an amended complaint. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 129 S.Ct. at 1948–49. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George, 507 F.3d at 607. Plaintiff should

-17-

carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint", refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed.R.Civ.P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555. Plaintiff is cautioned to comply with Fed.R.Civ.P. 18(a) in any amended pleading.

Based on the foregoing, it is **HEREBY ORDERED** that:

The Clerk's Office shall send Plaintiff (1) a blank civil rights amended complaint form and (2) a copy of his First Amended Complaint filed November 30, 2011.

Plaintiff's First Amended Complaint is dismissed for failure to state a claim upon which relief may be granted.

Plaintiff shall file an amended complaint within thirty (30) days from service of this order.

If Plaintiff fails to file an amended complaint in compliance with this order, it is recommended that this action be dismissed, with prejudice, for failure to state a claim

and failure to prosecute, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g). <u>Silva v. Di Vittorio</u> 658 F.3d 1090 (9th Cir. 2011).

IT IS SO ORDERED.

Dated:    July 2, 2012          /s/ *Michael J. Seng*
                                 UNITED STATES MAGISTRATE JUDGE

-19-