# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES A. MOSIER, | Case No. 1:11-cv-01034-MJS (PC) |
| Plaintiff, | ORDER DISMISSING SECOND AMENDED COMMPLAINT WITH LEAVE TO AMEND |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILIATION, et al., | (ECF No. 15) |
| | AMENDED PLEADING DUE WITHIN THIRTY DAYS |
| Defendant. | |

**SECOND SCREENING ORDER**

**I.    PROCEDURAL HISTORY**

Plaintiff James A. Mosier is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed June 21, 2011 pursuant to 42 U.S.C. § 1983. (ECF No. 1.)

Plaintiff filed a first amended complaint (ECF No. 10) prior to screening of his complaint. The first amended complaint was dismissed for failure to state a claim, but Plaintiff was granted leave to file an amended pleading. (ECF No. 14.) Plaintiff filed a second amended complaint (ECF No. 15), which is now before the Court for screening.

**II.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief

1

against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

### III.  SUMMARY OF SECOND AMENDED COMPLAINT

#### A.  Defendants

Plaintiff names as Defendants (1) the California Department of Corrections and Rehabilitation (CDCR),[1] (2) Cate, Secretary of CDCR, (3) Allison, former Warden, California Substance Abuse and Treatment Facility ("SATF"), (4) Junious, former Warden, North Kern State Prison ("NKSP"), (5) Yang, NKSP Nurse, (6) Enonmeh, SATF Chief Medical Officer, (7) Salinas, SATF Correctional Officer, (8) Williams, SATF Correctional Officer, (9) Vigarino, SATF Correctional Officer, (10) Rodriguez, SATF Correctional Officer, (11) Mata, SATF Correctional Officer, (12) Villasenor, SATF Nurse, (13) Olemeko, SATF Nurse, (14) Doe I.

#### B.  Factual Allegations

Plaintiff suffers from epilepsy and seizures as documented during medical intake

---

[1] The CDCR is named solely for purposes of the Americans with Disabilities Act and Rehabilitation Act claims. (ECF No. 15 at ¶ 5.)

2

screening at NKSP in March of 2011. His claims arose during his initial incarceration at NKSP and following his transfer to SATF, where he remains.

Plaintiff claims that:

Defendants Cate, Allison, Junious, and Enonmeh failed to train, supervise and institute policies for providing effective medical care of inmates including Plaintiff.

Defendant Yang gave Plaintiff medication (Depakote) even though Plaintiff had advised he was allergic to it. The Depakote was continued for two weeks "during which time [P]laintiff experience daily seizures, which medical staff insisted [he] was faking." (ECF No. 15 at ¶ 37.) Yang claimed on one occasion that Plaintiff refused seizure treatment when in fact Plaintiff was incoherent. Yang left Plaintiff unattended when he was likely to injure himself without medical assistance. Yang made no effort to obtain a protective helmet or neurological consultation.

NKSP medical officials failed to provide for continuity of care upon Plaintiff's May 2011 transfer to SATF and failed to explain to SATF officials the medical and medication needs of Plaintiff.

Defendants Olemeko, Salinas, Mata and Doe I intentionally delayed summoning medical response to Plaintiff's seizures and prevented inmates from providing aid. Plaintiff suffered a seizure in the presence of Defendant Mata in May 2011. Mata did nothing, leaving Plaintiff with no medical attention. He suffered a seizure in the presence of Defendant Salinas in July 2011. Salinas ordered Plaintiff's cell-mate to stop assisting Plaintiff. Defendant Rodriguez was present when Plaintiff had a seizure in October 2011. Rodriguez stated that Plaintiff was a "pain in the ass" and a "problem" because of his medical condition and that he wanted Plaintiff "out of his prison so someone else can deal with [him]." (ECF No. 15 at ¶ 75.)

Defendants Mata, Williams, Villasenor, and Olemeko intentionally withheld Plaintiff's anti-seizure medication and disbursed it at incorrect times. Mata, in June 2011, refused to allow Plaintiff out of his cell to obtain his anti-seizure medication. Defendant Olemeko slammed the medication window closed when Plaintiff approached

in June 2011. Defendant Villasenor refused to give Plaintiff medication on August 24, 2011. Defendant Williams responded to Plaintiff's request that phenobarbital be administered on a regular schedule by stating that "we disburse medications on our time." (ECF No. 15 at ¶ 61.)

Defendants Vigarino and Williams intentionally pointed flashlights at Plaintiff without any legitimate penological purpose and in order to trigger seizures.

Plaintiff received an SATF chrono for a lower tier and bunk and a protective helmet in May 2011. However, Plaintiff did not receive his helmet until August 12, 2011.

Defendant Doe I advised a counselor in October 2011 that Plaintiff's seizures should not be treated as an emergency. Plaintiff was referred to psychiatric counseling for pseudo-seizures even though he was epileptic and had no history of mental health issues.

Plaintiff was not seen by a medical specialist until June 2011, when he was seen by a neurologist. The neurologist advised that Plaintiff had sustained traumatic brain injury and had abnormal activity on the right side of his brain.

**C.    Claims**

Defendants (other than CDCR) violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment and medical indifference, failing to adopt policies, train personnel, and provide Plaintiff with care and treatment to meet his needs as an epileptic suffering seizures.

All Defendants violated Plaintiff's right to disability accommodation under the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("RA"), intentionally discriminating against him because of his epilepsy.

As a result Plaintiff suffered more frequent seizures, striking his unprotected head. He now has traumatic brain injury.

**D.    Relief**

Plaintiff seeks monetary damages and declaratory relief.

## IV. ANALYSIS

### A. Pleading Requirements Generally

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir.1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 667-68.

### B. Failure to Supervise, Train and Implement Policies

To state a claim under § 1983, Plaintiff must demonstrate that each individually named defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S.Ct. at 1949. Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948-49.

A supervisor's failure to train subordinates may give rise to individual liability under § 1983 where the failure amounts to deliberate indifference to the rights of persons with whom the subordinates are likely to come into contact. Canell v. Lightner, 143 F.3d 1210, 1213-14 (9th Cir. 1998). To impose liability under this theory, a plaintiff

5

must demonstrate that the subordinate's training was inadequate, that the inadequate training was a deliberate choice on the part of the supervisor, and that the inadequate training caused a constitutional violation. Id. at 1214. See also City of Canton v. Harris, 489 U.S. 378, 391 (1989); Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001).

Plaintiff fails to allege any facts personally linking Defendants Cate, Allison, Junious, and Enonmeh to any alleged rights violation. These Defendants cannot be held liable under § 1983 solely because of their supervisory roles. No facts are alleged that suggest these Defendants deliberately provided inadequate training, policies and supervision for the purpose of creating a constitutional violation.

Plaintiff was previously advised of these deficiencies in this claim and of what was necessary to correct them. He was given an opportunity to correct them. He apparently was unable to do so. No useful purpose would be served in once again advising him of the pleading deficiencies and how to correct them. He will not be given further leave to amend.

**C.  Deliberate Indifference**

1.  Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976). The two prong test for deliberate indifference requires the plaintiff to show (1) "a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096, quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096, citing McGuckin, 974 F.2d at 1060. In order to state a claim for violation of the Eighth

1  Amendment, a plaintiff must allege sufficient facts to support a claim that the named
2  defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . . "
3  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

4  Plaintiff's allegations of epilepsy and related seizures interfering with his daily
5  activities, taken as true on screening, are sufficient to show a serious medical need
6  satisfying the first prong of deliberate indifference. "[T]he existence of an injury that a
7  reasonable doctor or patient would find important and worthy of comment or treatment;
8  the presence of a medical condition that significantly affects an individual's daily
9  activities; or the existence of chronic and substantial pain are examples of indications
10 that a prisoner has a serious need for medical treatment." McGuckin, 947 F.2d at 1059-
11 60.

12 However, the facts alleged in the second amended complaint do not suggest
13 intentional indifference to Plaintiff's medical needs.

14 Without more, Plaintiff's desire for treatment other than that ordered by prison
15 medical staff does not reflect deliberate indifference. It appears Plaintiff had access to
16 medical staff at both NKSP and SATF and received treatment including medication and
17 a medical chrono shortly after his incarceration. Plaintiff's desire for a neurological
18 consultation and his disagreement with medication, its dosage and administration does
19 not state a claim under § 1983 because there is no suggestion Defendants acted in a
20 medically inappropriate manner, See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.
21 1996), or caused Plaintiff to suffer harm from more frequent and severe seizures.

22 Plaintiff claims Defendant Yang gave him a medication, Depakote, for two weeks
23 even though Plaintiff advised he was allergic. This could suggest deliberate indifference
24 if Yang were aware of serious risk of allergic reaction and then intentionally
25 administered the drug. See e.g., White v. Napoleon, 897 F.2d 103, 110 (3rd Cir. 1990)
26 (doctor's persistent use of a particular medication after prisoner told doctor that seizures
27 had increased in ferocity and frequency may be sufficient to state deliberate
28 indifference). However, it is not clear from the allegations that Depakote posed a

7

serious risk of harm, of which Yang was aware, and caused Plaintiff harm. Merely alleging Defendant was aware that Plaintiff feared an allergic reaction of unknown nature and severity does not meet the standard. Though Plaintiff claims he seized daily during the two weeks he was given Depakote, no facts suggest this was unusual or that the seizures were caused by allergic reaction to Depakote.

Plaintiff's claim that Defendants failed to provide medication and medical response to seizure events suggests only inactionable negligence. To state indifference the facts alleged must suggest a knowing and intentional denial, delay, or interference with care and treatment of Plaintiff's epilepsy and seizures causing harm. See e.g., Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998) (deliberate indifference where jail officers and nurse knew plaintiff had epilepsy, knew he was not receiving any medication, and ignored his repeated requests for treatment). The Court would be in a far better position to evaluate the cognizability of Plaintiff's claim in this regard if Plaintiff were to provide greater factual detail to enable the Court to determine the nature and extent of Plaintiff's medication and medical response needs. For example, Plaintiff might explain his prescribed medications, dosages and administration schedules; what typically happens during a seizure and how long seizures last; when and how Defendants responded; why Defendants' response was deficient; why Plaintiff believes Defendants' response was indifferent; and what harm was caused Plaintiff as a result of Defendant's alleged acts and inaction.

Likewise, that there was a delay in getting Plaintiff the protective helmet provided for by medical chrono does not alone suggest Defendants' indifference. The Court cannot determine who was to provide the helmet, why there was a delay, and why Plaintiff believes the delay is attributable to deliberate indifference.

Plaintiff alleges traumatic brain injury. (ECF No. 15 at ¶ 73.) But no facts suggest it resulted from Defendants' alleged actions.

In summary, the allegations in the second amended complaint do not suggest any deliberate denial, delay, or interference in addressing Plaintiff's medical needs

resulting in harm. The Court will allow leave to amend. If Plaintiff chooses to amend, he must set forth sufficient facts suggesting Defendants' deliberately indifferent response to his epilepsy and seizures.

### 2. Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). But "routine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9 (1992). In order to state a claim, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150–51 (9th Cir. 2010); Richardson v. Runnels, 594 F.3d 666, 672 (9th Cir. 2010).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference." Id. at 1057, quoting Farmer, 511 U.S. at 837. "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." Id., quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002). The prison official must "know [ ] of and disregard [ ] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837.

Plaintiff claims that Defendant Vigarino intentionally pointed a flashlight at him and laughed as Plaintiff started to seize and that Defendant Williams intentionally

1  pointed a flashlight at him on several occasions notwithstanding Plaintiff's objection.
2  Plaintiff concludes these actions had no legitimate penological purpose.

3  However, it is not clear Vigarino and Williams were specifically aware flashlights
4  posed a substantial risk of harm to Plaintiff. Nothing suggests Plaintiff had a medical
5  chrono or medical order regarding use of flashlights by corrections staff, or that these
6  Defendants were otherwise aware of such risk.

7  It is not clear these Defendants lacked legitimate reason for using flashlight.
8  Plaintiff does not allege in any factual detail the circumstances under which flashlights
9  were used, e.g., whether in the course of responding to Plaintiff, assisting medical staff,
10  for some corrections purpose, or otherwise.

11  Plaintiff does not allege how he was harmed by the flashlight, if at all.

12  The Court will allow leave to amend. If Plaintiff chooses to amend, he must set
13  forth sufficient facts suggesting a deliberately indifferent response to serious risks
14  arising from Defendants' use of flashlight.

15  **D.     Accommodation**

16  Title II of the ADA and § 504 of the RA "both prohibit discrimination on the basis
17  of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA
18  provides that "no qualified individual with a disability shall, by reason of such disability,
19  be excluded from participation in or be denied the benefits of the services, programs, or
20  activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. §
21  12132.

22  Section 504 of the RA provides that "no otherwise qualified individual with a
23  disability . . . shall, solely by reason of her or his disability, be excluded from the
24  participation in, be denied the benefits of, or be subjected to discrimination under any
25  program or activity receiving Federal financial assistance  . . . ." 29 U.S.C. § 794.

26  The ADA and RA apply to inmates within state prisons. Pennsylvania Dept. of
27  Corrections v. Yeskey, 524 U.S. 206 (1998); see also Armstrong v. Wilson, 124 F.3d
28  1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052.

"To establish a violation of [§] 504 of the RA, a plaintiff must show that (1)[he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Id.

"To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139.

Prison medical care is considered a service, program or activity covered by the ADA. Kiman v. New Hampshire Dept. of Corrs., 451 F.3d 274, 284 (1st Cir. 2006), citing United States v. Georgia, 546 U.S. 151 (2006).

Title II of the ADA was modeled after § 504 of the Rehabilitation Act. The elements of claims under both statutes are nearly identical, and precedent under one statute generally applies to the other. Washington v. Indiana High School Athletic Association, Inc., 181 F.3d 840, 845 n.6 (7th Cir. 1999).

Plaintiff's epilepsy is sufficient to allege a disability. See Bilal v. New York City Dept. Of Corrections 2010 WL 1875731 *4 (S.D.N.Y. May 10, 2010) (epilepsy is recognized as a disability under the ADA).

However, Plaintiff fails to allege facts showing he was denied access to medical care and treatment by reason of his epilepsy and seizures. "Whether and when the ADA

11

supports claims by prisoners regarding a prison's medical . . . services is a close question that turns on distinguishing actionable claims of denial of medical treatment from non-actionable claims of mere inadequate or negligent medical treatment." Payne v. Arizona, 2012 WL 1151957 *6 (D.Ariz. 2012); see also Kiman, 451 F.3d 274 at 284 (noting courts have "differentiated ADA claims based on negligent medical care from those based on discriminatory medical care").

The treatment, or lack of treatment, concerning Plaintiff's medical condition does not provide a basis upon which to impose liability under the ADA or the RA. Simmons v. Navajo County, 609 F.3d 1011, 1022 (9th Cir. 2010), citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."); Burger v. Bloomberg, 418 F.3d 882, 882 (8th Cir. 2005) (medical treatment decisions not a basis for ADA or RA claims).

Plaintiff's Eighth Amendment medical indifference claim fails for the reasons stated above. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." Graham ex rel. Estate of Graham v. County of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004), quoting Westlake v. Lucas, 537 F.2d 857, 860, n.5 (6th Cir. 1976).

Plaintiff was given a medical chrono two month into his incarceration providing for a lower tier and bunk and a protective helmet. Nothing in the second amended complaint suggests these accommodations were insufficient.

Nothing in the second amended complaint suggests that Plaintiff was otherwise excluded from or denied the benefits of any CDCR program or service by reason of his epilepsy and seizures.

Even if Defendant Rodriguez stated that Plaintiff was a "pain in the ass" and a "problem" because of his epilepsy and seizures and that he wanted Plaintiff "out of his prison so someone else can deal with [him]", this alone does not suggest deliberate indifference to Plaintiff's rights under the ADA and RA.

12

Accordingly, Plaintiff fails to state a claim for relief under the ADA and RA. The Court will allow leave to amend. If Plaintiff chooses to amend, he must set forth sufficient facts suggesting he was excluded from participation in or otherwise discriminated against with regard to CDCR services, programs, or activities by reason of his epilepsy and seizures.

## V.    CONCLUSIONS AND ORDER

Plaintiff's second amended complaint does not state a claim for relief under § 1983. The Court will grant Plaintiff **one final opportunity** to file an amended complaint solely as to the claims against Defendants CDCR, Yang, Salinas, Williams, Vigarino, Rodriguez, Mata, Villasenor, Olemeko, and Doe I. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 129 S.Ct. at 1948-49. Plaintiff must set forth "sufficient factual matter . . . to state a claim that is plausible on its face." Id. at 1949, quoting Twombly, 550 U.S. at 555. Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Third

Amended Complaint", refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff (1) a blank civil rights amended complaint form and (2) a copy of his second amended complaint filed August 2, 2012;

2. Plaintiff's second amended complaint is dismissed for failure to state a claim upon which relief may be granted;

3. Plaintiff shall file an amended complaint within thirty (30) days from service of this order; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, this action shall be dismissed, with prejudice, for failure to state a claim and failure to prosecute, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g). Silva v. Di Vittorio 658 F.3d 1090 (9th Cir. 2011).

IT IS SO ORDERED.

Dated:   July 26, 2013                         /s/ *Michael J. Seng*
                                               UNITED STATES MAGISTRATE JUDGE